UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                                **MEMORANDUM OF LAW & ORDER**
                                      Crim. No. 14-339

Deshun Kashad Patterson,

    Defendant.

_____

    Benjamin Bejar, Assistant United States Attorney, Counsel for Plaintiff.

    Caroline Durham, Assistant Federal Defender, Counsel for Defendant.

_____

The above-entitled matter is before the Court upon Defendant's objections to the Report and Recommendation of United States Magistrate Judge Hildy Bowbeer dated January 30, 2015. Defendant objects to that portion of the Report and Recommendation which found that law enforcement had a legal basis to stop and search the Defendant.

Pursuant to statute, the Court has conducted a <u>de novo</u> review upon the record. 28 U.S.C. § 636(b)(1); Local Rule 72.2(b). Based upon that review, the Court will not adopt the Report and Recommendation [Doc. No. 37] of United

1

States Magistrate Judge Bowbeer dated January 30, 2015 and will grant the motion to suppress.

I.   **Factual Background**

In the early evening of October 7, 2014, Minneapolis Police Officer Kenneth Tidgwell was on duty in the Directed Patrol Unit; a proactive unit that patrols the north side of Minneapolis. (Transcript at 8.) He was with two other officers in an unmarked police vehicle. He was driving east on West Broadway when he noticed a motorcycle in front of him, taking a left onto Emerson Avenue. Tidgwell testified that the motorcycle driver "ended up cutting off some people that were trying to cross in a crosswalk." (Id. at 17.) Tidgwell claims that at that point, he decided to follow the motorcycle and that one of the officers in the car entered the license plate number of the motorcycle into the squad computer and learned that the registered owner was the Defendant Deshun Patterson. (Id. at 19.) Tidgwell could also see that the driver was wearing the colors of the Wheels of Soul Motorcycle Club. (Id. at 18.)

Tidgwell testified that he stopped the Defendant based on the traffic violation he witnessed - failing to yield to pedestrians in a crosswalk. The government has submitted the squad car video which begins seconds before the

2

Defendant makes the left hand turn, and which runs throughout the stop and arrest. (Gov't Ex. 1.) It was impossible for the video to capture the point in time when the Defendant actually travels through the crosswalk.

## II.   Motion to Suppress

The law is clear that any traffic violation, no matter how minor, creates probable cause to stop the driver of the vehicle. United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996); United States v. Banks, 553 F.3d 1101, 1104 (8th Cir. 2009) (committing a petty misdemeanor can establish reasonable suspicion of criminal activity sufficient to justify a Terry stop). "This is true even if a valid traffic stop is a pretext for other investigation." United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). "The determinative question is not whether [the defendant] actually violated the Motor Vehicle Code [], but whether an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a code violation." United States v. Martin, 411 F.3d 998, 1001 (8th Cir. 2005).

The Magistrate Judge found that based on Tidgwell's testimony and the squad car video, Tidgwell had a valid basis to stop the Defendant for failing to yield to pedestrians in a crosswalk, which is a violation of state law.

The Court has conducted a de novo review of the record, which included reviewing the squad car video and the transcript of the evidentiary hearing before Magistrate Judge Bowbeer on January 9, 2015.  At the evidentiary hearing, Tidgwell testified that as the Defendant made a left hand turn from West Broadway Avenue onto Emerson Avenue, he witnessed the Defendant "cutting off some people that were trying to cross in a crosswalk." (Transcript at 17.)  The squad car video does not capture the point in time when the Defendant drives through the intersection.  Only when the squad turns onto Emerson Avenue does the video show the crosswalk.  At that time, which is approximately one to two seconds after the Defendant completed the turn, the video shows three pedestrians located next to the right corner, less than two steps from the curb, of a two lane, one way street, and that Defendant had turned into the lane farthest from the pedestrians.  The video is thus at odds with Tidgwell's testimony that the Defendant "cut off" the pedestrians in the crosswalk when he made the left turn onto Emerson Avenue.  In fact, the video shows one of the pedestrians waving to the police vehicle to go before them, and at that time, the pedestrians are still standing next to the curb.

In addition, after he was stopped and informed of the reason he was

stopped, the Defendant told Tidgwell that he had, in fact, yielded to the pedestrians and that they had waved him through. (Gov't Ex. 1 (Video at 1:30-42).) Tidgwell responded "Okay." (Id. at 1:43.) At the hearing, Officer Tidgwell acknowledged that the Defendant told him the pedestrians had waved him through the intersection, and offered no testimony to refute the Defendant's statement. (Transcript at 44.)   Also, the Defendant's statement is consistent with the video which shows the pedestrians waving the police vehicle to go before them.

The Court finds that Tidgwell's testimony as to the basis for the stop is not credible. The video does not support his testimony that the Defendant "cut off" pedestrians in the crosswalk when he turned onto Emerson Avenue. Instead, the video shows the Defendant was at least the width of one lane of traffic **away** from the pedestrians at the time he made his turn and that the Defendant appeared to be traveling at an appropriate speed when he made such turn. The Court further finds that Tidgwell did not refute the Defendant's statement that the pedestrians waved the Defendant through the crosswalk. Based on this evidence, the Court finds that an objectively reasonable officer could not have formed a reasonable suspicion that the Defendant committed the traffic violation

of failing to yield to pedestrians.  The Court therefore finds that law enforcement did not have a valid basis to stop the Defendant on the evening of October 7, 2014.  Accordingly, any evidence obtained as a result of this invalid stop must therefore be suppressed.  See United States v. Davis, 760 F.3d 901, 903 (8th Cir. 2014).

Accordingly,

IT IS HEREBY ORDERED that Defendant Deshun Kashad Patterson's Motion to Suppress Seizures as the Result of an Unlawful Search [Doc. No. 19] is **GRANTED.**

Date:   March 13, 2015

                                                  s/ Michael J. Davis  
                                                Michael J. Davis  
                                                Chief Judge  
                                                United States District Court